22-2291. Mr. Wilcox, you have reserved three minutes of time for rebuttal. Is that right? That's correct, Judge Reyna. Okay. We're ready to move on. Thank you, Judge Reyna, and may it please the Court. Jason Wilcox on behalf of Impact and distribute media-rich online ads that use less bandwidth, that are easier to create and manipulate, and that are far more customizable and reusable than ads that were created through the other available technology at the time. And Impact Engine achieved those benefits through two technological innovations. A data structure that represents the ad as a series of independent layers built up from templates and separate media files, and an architecture that takes the software for creating and managing the ads off the desktop and puts it onto a server. Counselor, let's get to some of the substantive issues at play here. Talk to us about code construction and why you think that was error. So if you're talking about the means plus function terms, Judge Reyna, on the means plus function terms, why we think that was error is the district court identified over 300 lines of corresponding structure for the rendering function that's performed by the project viewer. It's banned from column 4, lines 27, to column 9, lines 19. And in those columns, you have other claimed functions that are covered. So for example, column 4, lines 48 to 58, it talks about autoplay on and autoplay off. Well, those are a separate function that is claimed in one of the patents. It's the 6253 patent claim 1, but it's not claimed in the 497 patent at all, and it's not part of the rendering function. It's a separate function that's performed. I'm curious, why does it matter that in the original claim construction order, the district court referred to, it was five columns or is this a summary judgment? This is a summary judgment, Judge Rother, yes. The district court looked at the particular function and looked kind of throughout this larger range, those five columns, columns 4 through 9, for those structures that perform that particular function and found they had not been shown. I don't see why, I don't see that the district court asked for the presence of structures that were immaterial to the particular function of the claim. Well, what the district court said at Appendix 24 was that it had identified all of the structure from column 4, lines 27, to column 9, line 19, as the structure that performs rendering and that our expert hadn't applied that in his opinion. Now, that's wrong on its own terms. When you just look at the structure, the district court was not picking and choosing, well, we think in here, this is the structure that performs rendering and this is the structure that performs autoplay and parsing it in that way. At Appendix 24 to 25, the district court said that we needed to apply all of that structure. Now, our expert did do that. How long was there between the claim construction order and the summary judgment motions? I'm sorry, Judge Hughes, I don't know. How long? How much time was there between the claim construction order and the summary judgment motions? I don't know the exact time, it was at least a year, if not more. So, when you got the claim construction order and you saw that she had cited these multiple columns in the specification and you presumably knew that some of it did not relate to project viewer rendering, why didn't you ask for clarification? Well, so what we did is we looked at Appendix 7, which is the claim construction, and what the district court said was she identified the four functions that the project viewer performs spread across all of the claims and then the district court said that the structure that performs those functions, so all of those functions, was this entire range. So, we took that to mean that she had identified that this is a means plus function term and here is the structure that corresponds to the functions writ large. But what we use that specification include, the cited parts of the specification include structure that doesn't relate to those functions, right? That's correct. Well, then why don't you ask for clarification and say what structure relates to the specific functions at issue? Because the functions is not enough to identify the corresponding structure. I agree, Judge Hughes, and so the way that we decided to approach that was in our expert reports and in our summary judgment briefing to say here's what we think is the structure that corresponds within that range that you've identified, here's the structure that we think corresponds to each function. When did you first discover that the court was contemplating or about to base means plus function on those five columns? At the summary judgment hearing, Your Honor. It was a dispute between the parties where Google said... Did you get a chance to dispute that at summary judgment? Well, we did because what happened is Google teed it up as saying, we think that for rendering it's going to be all five columns, and so then we pushed back and said, for example, at appendix 98-55-57, we don't think that is right, and explained to the district court why we didn't think that was right. But then we did that, laid out at appendix 98-60-63, why even if you think it's all five columns, it's there. And that's what the district court also overlooked. If you look at appendix 24-25, she says that Impact Engine didn't apply her construction because it requires all of the corresponding structure across all five columns. And we did, as an alternative argument... I may be misremembering this, so correct whatever I'm about to say that you think is wrong. The initial claim construction order talks about the full five columns. Then you get to the summary judgment, and the language that the district court uses is, you didn't, all about the rendering function you in your expert report did not show the presence of the structural support for that. And that's because your expert report didn't actually walk through what the structures were in the spec. Instead, as I understand it, and this is where you'll correct me, he created his own kind of functional It really wasn't your job to say, here, the rendering structures are only these. We had evidence of those particular rendering structures. And why in the absence of that does anything else matter? Well, I think we did make that argument, Judge Toronto. We point out in our brief, and you can see it We think it's column four, lines 27 to 42. And then as far as where our expert addressed that, we addressed it in our summary judgment brief at appendix 98-57-60. And our expert addressed those specific structures at 83-55-88, 86-47-60, and 88-80-86. So it was in the record below. We made those arguments in our brief here before the court. And we do think the structure is much more limited for rendering. And it's only supposed to be column four, lines 27 to 42, which lays out the specific algorithm for how you render the communication. And you made this argument at summary judgment? We did make this argument at summary judgment at appendix 98-57-60 with citing support to our expert report. And then we went on at appendix 98-60-63 to talk about how even if you think it requires all five columns of structure, here's where our expert identified all five columns of that structure. Google at page 56 of its brief points out that, for example, our experts didn't look at the core design files that are listed at column 459-859. But that just shows why the district court's construction is wrong. That's a preferred embodiment. All you're supposed to do for a means plus function claim is identify the necessary algorithm. If it's software, that's identified at 427-42. If you look at then this additional structure where you're down to specific file names and having to have this exact file name and function call structure, that's a preferred embodiment. You can see that because at those columns, it's consistently called in an embodiment. And because at column three, lines 47-56, it also is called a preferred embodiment or an exemplary embodiment. So, Judge Toronto, I think we did make the exact argument that you believed that we needed to make to tee it up for this court. We made it here in our briefs. On the legal point, I guess I suppose you had a, you know, a clear means plus function claim. Computer, we're looking for a structure for, you know, means for carrying out something on a computer. Yes. And in the spec, what there is is a very specific set of code. Wouldn't the inquiry be that you'd say that very specific code is the structure and then the claim covers that specific code and equivalence to it? I thought I heard you say a minute ago that you can kind of ignore the specific, the specifics of the code and just think about a general algorithm that might be of which the specific code is an instance. That's what I'm confused about. Let me be clear because I think maybe I was a little bit confusing. So, we think you have to have the structure that's at column four, lines 27-42, because that lays out the algorithm. And as this court has said in cases like University of Pittsburgh and FISH and Typhoon Technologies, what you're looking for is the algorithm. But then the idea, you have to have a good idea. But if it goes on, do you ignore the specifics that follow it? That's exactly what this court said in University of Pittsburgh. The entire argument there was there was, like here, we lay out the general algorithm and then there was a specific implementation that was discussed. And this court said all that's required is the algorithm. The specific implementation that follows is just a preferred embodiment. That's also consistent with this court's cases like Mesolingua, which said the same thing, that you don't read in preferred embodiments into the means plus function. You look at what's the necessary structure. And for software, it's an algorithm. What's the implication for the other issues that are before us with respect to how we decide this particular question? Let's assume that we were to vacate and remand. What other issues are implicated? If you vacate and remand, that takes care of – On the claim construction. On the claim construction, that takes care of two of the claims or two of the patents. It takes care of the 497 patent, Claim 9, and it takes care of the 253 patent. You still need to address the 101 issue and you still need to address our written description argument for Claim 30 of the 898 patent. And for Claim 30 of the 898 patent, let me address that really quickly. The district court, without citing any – The one other issue that you're talking about that survives is the non-project viewer claims. Well, so there would be – Not all subject. Well, there are some project viewer claims that were invalidated by the district court on 101. For example, the claims of the 832, 632, and 8253 patent, because the district court overlooked the court by the time you got to the claim construction ruling, didn't treat them as means plus function. At Appendix 26, she instead treated them as just generic applications without looking to the corresponding structure. Any questions? Which you need to do according to ENFISH. When you have a means plus function term, you need to look at what's the corresponding structure and decide if that supplies an inventive concept. Here, we think it does for the reasons we laid out in our brief, and the district court just simply overlooked that and treated project viewer for at least the 832, 632, and 8253 patents as if it wasn't a means plus function term at all, despite an Appendix 7 interclaims construction saying it was a means plus function term. So for that reason alone, at least those means plus function terms need to be at a minimum remanded for the district court to reevaluate 101 after treating them as means plus function terms with the appropriate corresponding structure. We think the court can go ahead and reverse. Can I take you back just for one minute before you sit down to the column four lines, what is it, 27 to 42? Yes. What about that would you describe as an algorithm? Well, it tells you there that you need to have... Say the thing is getting an object, and it's doing what I understand, maybe incorrectly, is the definition of rendering, which is serializing it, taking something to simplify that's sort of two-dimensional and making it one-dimensional so that you have an actual sequence of bits. But it doesn't... Does it actually say how you do that? Well, what it says is you have to take the project object, it has to have the slides that make up the communication in an array, and then it says what it does is it loads and interprets the project object and then determines a load sequence for the communication project content. And then that project object has... I guess that doesn't feel to me much like what I would call an algorithm. It says get an object, render it. Well, I think it is enough of an algorithm, at least under the University of Pittsburgh, and I would also say Google, at least initially, at appendix 25, 52 to 53, thought that was the algorithm and all the structure you needed to. To be fair, they went down to column... to line 46 in that column, but that was their original position was that that was the algorithm and that's all you needed. When you're saying algorithm, are you saying that what these terms represent is in ordered steps that you follow in the practice of the claim? Yes, it's an ordered step that you follow. What you do is you get this project object that has a very specific structure and then you load it and then you figure out how you load all of the content beneath it that has it built up in this layered form. And that's the algorithm. It gives a specific example after that, but you're not required to have that specific example under University of Pittsburgh. If I can just make one more point, I recognize I'm slightly over and that I'm eating into my... more than eating into my rebuttal time. No. My final point is just on the non-means-plus-function claims for 101. The reason that you know that they're not ineligible is because the claims claim of communication, which at Appendix 11-479, the district court said has to be a collection of slides, and those slides have to be built up of a collection of layers. So just like in McRow and in EnFISH, what we have here is specific data formats that take it from the realm of the abstract into the concrete. Thank you. Long story. We're going to keep getting back to rebuttal. Good morning, Your Honors. May it please the Court. Good morning, Counselor DeFrance. I'd like to pick up, unless the Court has other preferences, with the question Judge Hughes asked about the time between the claim construction and the summary judgment. The answer is that was about 15 months, and... Well, you're not getting that free either, because I think what the district court did here was really confusing by identifying a whole bunch of material without specifically mapping the structure in that to the functions. And so I'm left with a hard task of determining what she thought the structure was and how to determine whether you infringed that or not, because I can't... I mean, it's not my job to read these multiple... Part of it, I know, is to know, but it's still not my job to read this and figure out what the structure is in the first instance. So why don't you ask for clarification? Well, I think it's important to recognize that when Google put forth its mean force function construction of this term, it proposed almost exactly the same structure for the rendering function that the district court ultimately adopted. So Google itemized the... What do you mean? I don't see anywhere where the district court actually said, here's the structure for the rendering function. Am I misreading that? I thought she just said, here's the columns in this specification that correspond to the structure. Well, so what I was referring to was Google's claim construction position. So if the court looks at Appendix 7395... I'll pull that up to... You'll see that Google proposed structure in the table there on 7395. Google proposed structure for the project viewer that is rendering. And it proposed 427-299, which is almost exactly the same as what the district court adopted in its construction of this term as surrendering. And if you look at the district court's claim construction opinion... Help me look at what you just were reading. Sure. Give us information. Okay. That's five columns. Yes. Everything in all five of those columns is structure for the project viewer rendering function? Yes. That was the position that we put forward. Impact Engine never disputed that at the stage of claim construction. And I want to get back to Judge Toronto's question. I think I found what the thing that was footnote 5 call is. Yeah, it's at 7395, and there's a table there. Footnote 5 call, that's what you're referring to? Yes. Thank you. Yes, yes. So at the same time, we've rather never refuted your proposed construction, the correspondence structure that you were proposing? That's correct. So at the time when claim construction... We're talking backwards. Where are we right now? Claim construction or summary judgment? At claim construction. So in May of 2021, the district court issued the claim construction order, the supplemental claim construction order, where it construed project viewer. And when the parties were briefing that, when claim construction was at issue before the court, Google proposed this structure for rendering that I pointed the court to on 7395. Impact Engine's response to that was just to say means plus function doesn't apply. And you can see that brief is at... But why doesn't it apply? Because there's no corresponding structure, or there's no identification of a specific structure that's being asserted as corresponding. So Impact Engine's position at claim construction was that project viewer is a known, familiar term that has structure in itself and doesn't require means plus function construction. So it wasn't a 126? That was their primary argument. Yes, exactly. And we proposed a means plus function construction, and Impact Engine's response to that was almost non-existent. They devoted one paragraph to this in their claim construction briefing, which is at Appendix 7564. And there, it's the last paragraph on that page before the brief turns to the rendering term. And all that Impact Engine says is that the specification discloses additional structure elsewhere that Google had not pointed out. So there's no dispute about what Google said is corresponding to rendering as corresponding to rendering. And in fact, Impact Engine's expert, under deposition, agreed. And just to be clear, because this is going a little fast, but the additional structure is what is in footnote 8 on 7564. That's in columns 13 to 14. Is that what we're talking about? So I'm looking at 7564, lines 16 to 18. I thought you used the phrase additional structures. That's lines 13 to 16 with footnote 8 attached to it. Yeah, so maybe start at line 14, yeah. Okay, and footnote 8 is the citation for that additional structures point, which refers to columns 13 to 14. Yes, and at line... So I'll just read the court also, this part at lines 14 to 18. Impact Engine said, a person would have understood that the function Google identifies can be formed by additional structures disclosed in the specification. And then there's footnote 8. And then they go on to say, a corresponding algorithm is discussed at least in the context of figure 1 and the accompanying text, e.g., figure 1, 2, 65 to 329, 8, 61 to 95. And that last bit is part of Google's. Yes, so I'm not sure why that was a dispute. Right, but you said, in fact, it was different from what you presented. That's what I was... I'm sorry, I didn't understand. Does any of this response that you're telling us cite the part of column 4 they're citing to us today? The part of Google's proposed structure? Yeah. Yes, that was included in part of Google's proposal, which was 427 to 99, I believe, which is almost exactly the same as what the district court ultimately... No, no, you're reading from their brief, aren't you? Yes, 7564 is their brief, yes. Right, that's what I meant. I see. Does any of their claim construction brief cite the parts of column 4 as the structure that they're talking about today? What they say during claim construction was Google... a person would have understood that the function Google identifies can be performed by additional structures. You just had the whole mass of columns. The court agreed with you, and they're citing additional stuff. Yes. But now they're trying to say it's only these few lines in column 4. Yes, and they never said that during claim construction. Their expert agreed that... Did they say it later? They said it at summary judgment, which was... Once it was settled that this was a 112.6 claim, they then went back and on summary judgment said, We actually think that the right structure is something narrower, right? Yes, that's exactly right. And then what did the district court do with that contention? The district court did not treat that as a claim construction argument because it was too late. Did you respond to it? We said it was improper. It was too late. We said all of that, and we said that... Did you say that these lines they cited don't show any structure? Yeah, we also said that's too little. It's not an algorithm, as Judge Toronto was suggesting previously. It doesn't look like an algorithm there. It's just sort of a recapitulation of the function. Even in the word sense that we've allowed? Yes, yes. So we said all that also. And the district court did not treat this as a claim construction argument. It treated it as a failure to apply the construction she had already adopted for purposes of infringement. So if we take them at their word, and I know they're probably still disputing this means plus function. Let's assume it's means plus function, and these lines are the only evidence they have of structure in the specification. What's your response as to whether that's sufficient structure? Are you talking about the... The lines on column 4 that they raised today. That they identify now? Yeah. As a preliminary matter, I don't think they dispute that 112.6 applies anymore. I think they've abandoned that argument at this point. But if you were to consider that argument, despite the corporate treaties we've raised, I think that that small speck of the specification does not constitute an algorithm. It's really just a summary of the function itself again. So it would fail on 12, in your view? If that were the only structure there, I think it would be indefinite. Is it your position that impact has weighed somehow any additional argument it may make to the means plus function order? As far as proposing a construction, yes. They were... They had every opportunity to... The way the argument was, they say, look at that, you have five columns of purported structure, and the argument is, well, only one column is corresponding structure. Yeah. That matter argument? The way I understand that argument, yes. I think what they're now saying is the district court's construction is wrong because it has all these columns and there's a bunch of stuff in there that is not corresponding structure to rendering. That is a problem, though. I mean, it's a problem for the court to say, I think, in the means plus function analysis, that the corresponding structure is in the five columns of the patent, not so-and-so pages. You, court, appellate court, go find it, find the parts that apply and disregard the ones that don't. I mean, it just seems that we're doing something here that is not part of our role. I don't think you need to do that because, again, during claim construction, when this was in dispute and Google was proposing this five columns of structure, Impact Engine's expert was deposed and asked directly, does that structure that Google identified in the five columns correspond to the rendering function? And the expert agreed that, yes, that is corresponding structure. All of it? Yeah, that was the question. And that's at Appendix 12466-67. So the district court was presented with this construction that Google presented. There was no alternative means plus function construction presented by Impact Engine. Well, I mean, you say that he agreed that all of it was structured, but then they say that in his report somewhere, he actually identified it in more specific ways and said project view of rendering is just this smaller part of the whole function and then identified narrower parts. So I don't see how a concession that these columns identify the structure necessarily means that he agreed that Google's system had to perform everything in all five of those columns to infringe. Well, I mean, that was the point of construing that term. And at the time of claim construction, he never made that argument. He certainly did come up with a new argument and break up the structure into these nine categories at the summary judgment stage when we were already on to talking about infringement. But at the time of claim construction, that argument was never made. So your view is you proposed the entirety of those five columns, made an object to it, they even added more stuff in, and by the time of the summary judgment stage, that was the claim construction. They hadn't asked for a clarification, and you clearly don't infringe because you don't perform everything in all five of those columns, even if today we think that's an overbroad claim construction. Yeah, and that's – this is – I mean, what do you do with the fact that claim construction is de novo? I mean, it doesn't seem to me that it's right to say all five – is project viewer rendering. It has all this stuff about different files and all that kind of stuff. Maybe that's part of the subsidiary about how you render it, probably your view. It seems a little bit too much for me. Well, the way I read it, and I'm not a computer code expert either, is that it is a linear discussion of how this works, and there are these core files, and this is the way things are loaded, and it's a very detailed – the corresponding structure can be detailed if that is what is put in there, and all of that is part of the structure. And I'll say as far as the – Can I ask you a question you may not know the answer to? Do you – I didn't see where you argued that these claims about project viewer rendering were also ineligible under 101, did you? We did make that argument. The district court did not decide it because she decided it on infringement. And you didn't appeal on that issue? Right, we couldn't appeal on that issue because we did not have a counterclaim of invalidity on those claims. We just had an affirmative defense, and we got the judgment of no liability that we wanted. So we didn't have an opportunity to cross-appeal. I wanted to get back to your point about the opportunity or the attempt by Impact Engine to change to the nine categories construction, after claim construction, during summary judgment. And I think that's just emblematic of the difficulties we've had late getting this case the whole time. The claims have always been a moving target at every point. At the first claim construction, at the first motion to dismiss. What is the point you're making? This kind of discussion, you go back to history and say, look what a mess it is. My mind just shuts down because I have no idea what to do with it. It's not an argument that I'm being asked to rule on. That's fair. And I don't get it. That's fair. So I'll make it concrete with just one example. So counsel, before you sat down, made a point to talk about how layers and slides are a really important inventive part of the claims here, and they should make the claims survive under 101. So they've made that argument now on appeal for purposes of 101 when invalidity is at issue. But during claim construction and during summary judgment, they made the opposite argument that the claims did not even require layers. And that's not in the appendix right now. We were surprised that they made this argument in reply, so we didn't put it in the appendix. But if the court looks at ECF number 336, that's impact engines, opposition to motion for summary judgment, at page 19, you'll see an argument that the claims don't require layers unless the claim actually expressly refers to layers. So that's directly contrary to what they're saying now when we get to argument validity. Is that because you're accused of ISIS don't have layers? That's an argument we made for non-infringement, and they said the claims don't require layers. But now when we're talking about invalidity, layers are very important and they're a critical inventive concept. Can I ask you, your opposite member referred to University of Pittsburgh case as teaching something about what exactly one looks for in the spec when the question is, is there an algorithm for 112, I guess, F purposes or six purposes, whatever one calls it. Whatever we say. Can you clarify that? So the way I read that case is that the issue there was there was a structure described, and then there were additional embodiments, possible more specific embodiments that were within that more general structure. And the error there was requiring the more specific embodiments. Here, the way I read the spec, and the way I think the district court did too, was that the discussion of... Right, that's exactly right. So the word linear, so I understand, correct me if I'm wrong, that the rendering here, which everybody puts little brackets serializing, what's going on there is that there are these, when stuff is written in object code, it doesn't have a kind of a linear structure, and in order to send it, to put it into a communication, you have to translate that into something you can send bit by bit by bit by bit. Is that the right picture to have in mind? That's generally how I understand it too. The district court. And is it your view that everything, sort of starting at column four, line 42, after the general paragraph that just says do rendering, do what I just said, is in fact that process of taking objects files, but particularly objects, and translating that into something that you can communicate in a linear fashion? Yes, loading them sequentially in the right order, and then the way the district court construed rendering, this is at appendix three, is serializing project slides and content into a format that can be stored and transmitted. You might sympathize with somebody who is told that the definition of rendering is serializing and it stops there, has not quite provided an adequate definition? I see the point there, yes, Your Honor. Okay, we're out of time. Thank you for your argument. Thank you, Your Honors. Ms. Wilcox, you've got three minutes. Thank you, Judge Reina. So I think the easiest way to tell that the corresponding structure the district court identified goes beyond the function for rendering is to look at column four, lines 48 to 58, and in those columns it talks about communication project playback using two states, autoplay on and autoplay off, and then describes an algorithm with specific details about how you perform that. That's not about how you render the communication. That's what you do at essentially the client device after the communication has been rendered. Where did you tell the district court that client construction was wrong and make this argument? We made it in our summary judgment brief at appendix 98, 55 to 57, and our expert made it in his report. All the structure we're identifying here on appeal is the exact same structure that we identified in our summary judgment briefing. Why isn't that too late? Well, it's not too late because... The district court's already made its claim construction order, and in the briefing that Google pointed me to now, it doesn't appear that you wanted this not to be a means plus function at all, but then when you responded to them on what structure, you didn't dispute what they said and you added even more in. Well, I think that the structure... And now we're back down to half a dozen lines or so in one column that nobody was told about until the summary judgment briefing on infringement. Well, I think what we did is the district court made a claim construction at appendix 7, and then we worked within the bounds of that claim construction moving forward, including on summary judgment. And in that claim construction, the district court didn't identify the corresponding structure. We don't see where you objected. We don't see where you disputed the claim construction that was achieved by the court. And even when you get to the summary judgment stage, you know, we have to crawl around to see if this argument has been preserved. I sympathize with you, but on the other hand, we have to see if we have an actual issue that's controverted, that's in dispute. Well, it was certainly in dispute in front of the district court at summary judgment when we got to that phase and we had a long... You disputed the court using those five columns of... And where did you dispute? What can we see in the record of that? Yes, let me give you the exact sites, Judge Reyna. So in our summary judgment brief, it would have been at appendix 98-55. The record? Show me the record. Yeah, it's at appendix 98-55-57 in our summary judgment brief. And then I can tell you where in our expert report that reference is after you've had an opportunity to look at those. 98-55. 98-55. 98-55. So this carries over from 98-55 to 5-6? To 5-6 and then through 5-7. And at the end there, including talking about the University of Pittsburgh case. So we said that Google misstated the court's construction because we didn't think that the court had actually adopted for rendering all of those columns and then we explained why that wouldn't be correct. And then we were citing to our expert report... Wait, where are you learning from? I'm sorry. I'm sorry, if you go to 98-55... 98-55. Yes. Sorry. It's a big appendix, Your Honor, I understand. Okay. Okay, I have the page. Okay, so at 98-55, we're talking about Google and Google's response that we're narrowing the court's construction by pointing to the specific functions that we... or the specific structure we identify. We talk about how Google misstates the court's construction. We offer our interpretation of what the court did at Appendix 7. That's the rest of Appendix 98-55. And then we say at 98-56, the court left the parties and their experts to determine which of those disclosed structures are necessary to perform each claimed function and that's exactly what our expert did here. And we then cite to what our expert did, and I can give you the citations for that. And he identified which structures are necessary to perform each claimed function. And then we explain why taking Google's approach would be incorrect. And then we go on to apply our view of the structure at Appendix 98-57 through 60. And then in terms of where our expert identified this... the various structures, our expert did it at... Sorry, just give me one second. It's actually... Here we go. He did it at Appendix 83-53 for render. So let me ask you this. Yeah, go ahead. This seems to suggest that the court determined that Project Viewer itself was means plus function and then had a bunch of different sub-structures or sub-functions under that. But is that really what happened? Because in the other claims that just had Project Viewer, she didn't say that it was means plus function. She said it was ineligible. So it was the Project Viewer rendering language that was means plus function that she identified was sufficient structure. Otherwise, you'd have one-on-one problems. So did she really say Project Viewer is means plus function for these claims and not other claims? So she didn't say it was means plus function for some claims and not others? Let me unpack that just really quickly, Judge Hughes. My understanding, just to be clear about it, my question is, I thought for these claims, she said that the Project Viewer rendering was means plus function language. That's not what she said in Appendix 7, which is her claim construction order. What she does is she says that the Project Viewer in these patents, and it includes patents that don't have the rendering functionality, is means plus function. She then goes on to identify four different functions that the Project Viewer performs. Some of them are in the patents that have rendering, and rendering is one of them. But some of the patents, like, for example, the 8253 patent, doesn't have rendering, does have viewing, and she identified that as one of the functions. And then she said the structure for these functions, plural, is at the range that she identified. Now, I agree with you. When she got to her summary judgment ruling later, and you look at Appendix 24, she then says, I'm sorry, not 24, 26, Appendix 26, she then says, no, those aren't means plus function. Those are just ordinary conventional structure. But that's not what she had said in her claim construction in Appendix 7. Neither party had argued to her that they were means plus function for some of the things, but not others. If we think your argument on what Project Viewer rendering and structure is too late, because you didn't, and I know you disagree, so you don't need to re-argue that. But if we think it's too late, and that her adoption of these five columns as the structure is, I guess, okay claim construction, then do you lose on non-infringement because Google doesn't perform everything in those five columns? No. Our expert identified where Google performs everything in those five columns, and we argued that to the district court at Appendix 98-60 to 63 with citing support to our expert. So you still would need to grapple with that. The district court didn't grapple with that at Appendix 24-25 and overlooked it. And also for the 101 claims where they saw these means plus function Project Viewers, whether it's this court or the district court needs to identify the corresponding structure for those other functions and then decide whether that corresponding structure takes it out of 101. If I could just, my last point, Judge Wayne, just to give those sites that I was in the middle of giving to you, that's a very good question. So for render, our expert pointed to the exact structure we're arguing here at Appendix 83-53. For transmit, it was Appendix 83-54. For auto on, auto off, it was Appendix 83-93. And for viewing the templates and media assets, it was Appendix 84-86. Thank you, Your Honor. I thank the parties for their arguments, and I take this case under advisement.